IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| QUINTAN J. KIMBROUGH, | |
| Plaintiff, | **8:23CV49** |
| vs. | |
| DOUGLAS COUNTY CORRECTIONS, MALIK MILLER, BRANDEN C. GUNN, ZACK WILLIAMS, and BARRETO, | **MEMORANDUM AND ORDER** |
| Defendants. | |

Quintan J. Kimbrough ("Plaintiff"), a prisoner proceeding in forma pauperis, filed a civil complaint pursuant to 42 U.S.C. § 1983 on February 2, 2023 (the "Complaint"), Filing No. 1, and multiple correspondence which this Court construes as supplements to the Complaint (collectively the "Complaint"). Filing No. 15, Filing No. 16, Filing No. 17, Filing No. 21, Filing No. 23, and Filing No. 24. Plaintiff named Douglas County Corrections ("DCC") and correctional officers Malik Miller ("Miller"), Branden C. Gunn ("Gunn"), Zack Williams ("Williams"), and Barreto as defendants, in their official capacities, and alleged claims arising from his confinement while housed at the Douglas County Correctional Center ("DCCC"). Filing No. 1 at 3–4. While Plaintiff's Complaint did not allege specific constitutional violations, Plaintiff appeared to assert various constitutional claims against defendants beginning in July of 2022 relating to threats and harassment, housing Plaintiff in administrative segregation without cause or due process in retaliation for filing

grievances, and against non-defendants for housing Plaintiff in noisy and unsanitary conditions, failing to provide Plaintiff medical documents relating to his mental health diagnoses, and withholding access to his legal papers. Filing No. 1 at 5–16; Filing No. 15; Filing No. 21 at 2–6; Filing No. 24 at 2–4.

On September 28, 2023, the Court completed its initial review of the Complaint and found that it was subject to summary dismissal under 28 U.S.C. §§ 1915(e) and 1915A (the "Initial Review"). Filing No. 25.

In lieu of dismissal, this Court granted Plaintiff leave to amend the Initial Complaint, instructing him to file an amended complaint that:

> sufficiently describes [Plaintiff's] claims against the Defendants in their individual capacities if he so chooses. *Plaintiff should be mindful to clearly identify the Defendants, explain what Defendants did to him, when Defendants did it, how Defendants' actions harmed him, what specific legal rights Plaintiff believes Defendants violated, the remedies sought, and the jurisdictional basis for this Court to review his claim(s).*

*Id.* at 7–8.

In response, Plaintiff filed a document which this Court construes as a supplement to the Complaint (the "Supplement"). Filing No. 33. In the Supplement Plaintiff indicates he intends to sue Defendants in their official and individual capacities and corrects several issues with his Complaint pointed out by this Court in the Initial Review. *Id.* For example, Plaintiff amends the relief sought to nominal and punitive damages, he withdraws his requests for pardons and downward departures for himself and other non-plaintiff inmates, as well as his demand to be returned to general population since at the time of the filing of the Supplement Plaintiff had been returned to general population. *Id.* Plaintiff did not, however, amend the factual allegations set forth in his Complaint. *See Id.*

2

As such the Court now conducts an initial review of the Complaint and Supplements to determine whether any of Plaintiff's individual capacity claims may proceed or if summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). For the reasons set forth below, the Court finds that summary dismissal is appropriate for all but Plaintiff's First Amendment retaliation claim against officer Miller in his individual capacity.

## I. SUMMARY OF THE COMPLAINT

In his Complaint brought under 42 U.S.C. § 1983, Plaintiff alleges claims of threats and harassment against all defendants, and a First Amendment retaliation claim against Miller for falsifying reports in order to punish Plaintiff with lockdown after Plaintiff filed a grievance against him.[1] Filing No. 1. The claims in Plaintiff's Complaint against Gunn, Miller and Williams arise from a series of events taking place from December 6, 2022, to December 29, 2022, while Plaintiff was housed at DCCC. *Id.* at 8, 10–14. The claims against Barreto arise from an unrelated incident taking place earlier that year in July and August, also while Plaintiff was housed at DCCC. *Id.*at 15–16.

In July of 2022, Plaintiff alleges that he had placed the sign on his door indicating he was using the toilet in his cell, but that Barreto began unlocking it, causing Plaintiff to yell at him to leave the door closed. *Id.*at 15. Barreto told Plaintiff he had a new cell mate coming and he needed to "hurry up" as the new cell mate's arrival took priority over Plaintiff using the bathroom. *Id.* As a result, Plaintiff filed a grievance against Barretto, but he never received a response. *Id.*

---

[1] While Plaintiff does not specifically indicate he sought to raise a due process violation against Barreto or Gunn for allegedly confining Plaintiff to his cell for roughly twenty-four hours, *see* Filing No. 1 at 12, 16, to the extent he intended to include such a claim it cannot proceed as pleaded. *See Key v. McKinney*, 176 F.3d 1083, 1086–87 (8th Cir.1999) (holding that twenty-four hours in restraints did not work a major disruption in inmate's prison life and thus inmate had no right to due process before restraints were imposed).

After Plaintiff filed the grievance, he alleges Barreto (for the 60 days Barreto was working on Plaintiff's wing), would taunt him and harass him and "dare" Plaintiff to file more grievances. *Id.* After about 30 days, Plaintiff alleges he asked for a "step 2" grievance and another step one grievance form as Plaintiff found it suspicious he had not received a response to his first grievance. *Id.* However, Plaintiff alleges he never received a response. *Id.* Plaintiff alleges that he and his cell mate were placed on lock down by Barreto for 24 hours because Plaintiff's cell door was closed when it should have been open. *Id.* at 16. Plaintiff further submits that even after Barreto was done working on his wing that Barreto returned on occasion, making Plaintiff very uncomfortable to the point he would hide in his cell whenever Barreto would appear because Barreto would announce that he "felt like locking someone down today" and then scan the area for Plaintiff. *Id.* at 15–16.

While Plaintiff was on lockdown on December 6, 2022, he alleges Miller verbally harassed him throughout the day, even after Plaintiff told Miller that he was on mental health medications and that harassment could trigger his post-traumatic stress disorder. *Id.* at 10. Plaintiff alleges multiple inmates witnessed the harassment by Miller. *Id.*

On December 8, 2022, Plaintiff alleges that after he refused to talk to or interact with defendant Gunn if he did not have to, Gunn tried to instigate problems by trying to make Plaintiff beg for toilet paper and threatening to write up Plaintiff simply for avoiding speaking to him. *Id.* at 12. After being unsuccessful, Gunn put Plaintiff in lockdown at the end of Gunn's shift anyway. *Id.* The following day Plaintiff admitted that he cursed at Gunn repeatedly in response to Gunn's harassment from the previous day. *Id.*

4

Then on December 13, 2022, Plaintiff asserts Miller entered the showers and informed Plaintiff he was moving his cell and, when Plaintiff failed to complain, Miller told Plaintiff he was going to go through Plaintiff's property before the move. *Id.* at 10. Plaintiff indicated he begged for Miller to let him pack his own things and left the shower but by the time he got to his cell Miller was there and his belongings were half packed and thrown around. When Plaintiff complained Miller told him to "stop crying" and that Miller "didn't care" about Plaintiff's things, that he did not have to let Plaintiff move them, and then Miller continued with his "trash talk and [making undescribed] threats." *Id.* at 11. After the move was completed, Plaintiff alleges Miller continued to harass him in his new cell, calling Plaintiff a "pussy" and asking Plaintiff if he planned to retaliate against him.[2] *Id.*

On December 14, 2022, Plaintiff alleges that officer Vega told him that Williams instructed officer Vega to ask Plaintiff if he was ready to kill himself yet and to move Plaintiff to a different cell to harass Plaintiff. *Id.* at 13. Plaintiff asserted that the look on Vega's face told Plaintiff that Vega was "in on" the harassment, but Plaintiff calmly responded no and told Vega that he and Williams should find something better to do than to harass Plaintiff. *Id.* Plaintiff alleges his cell mate Cornell Jackson witnessed the event and would provide a statement if necessary. *Id.*

On December 16, 2022, Plaintiff submits he had exited the shower and asked officer Grothie for a bottle of disinfectant spray but that Grothie told him to ask Miller as he did not have the keys. *Id.* As Plaintiff did not want to talk to Miller he went to his cell instead and did not obtain any disinfectant. *Id.*

---

[2] Plaintiff alleges at this time he also heard defendant Williams yell out "even your mamma knows you're a bitch." Filing No. 1 at 11–12.

On December 24, 2022, Plaintiff alleges that he told Gunn to stay away from his cell unless Gunn's body camera was on, but that Gunn refused, indicating there was no rule requiring he wear it.  *Id.* at 14.  Plaintiff also recalls informing Gunn that he did not want to talk to him and that he intended to file a Section 1983 lawsuit naming Gunn as a defendant for his continual verbal harassment of Plaintiff.  *Id.*

Plaintiff alleges that Miller threatened Plaintiff multiple times attempting to "provoke" Plaintiff, but after failing to succeed, on December 19, 2022, Miller entered Plaintiff's cell at 5:10 p.m., and told Plaintiff he better be on his "best behavior."  *Id.* at 8. Plaintiff alleges that later that day Miller wrote a false conduct report[3] against Plaintiff so that Plaintiff would be moved to "lockdown pending hearing as well as moved to HU20" in retaliation for Plaintiff filing a grievance against Miller for harassment and unprofessionalism several days earlier.  *Id.*

Plaintiff alleges that on March 4, 2023, he was looking at his medical records in medical and Miller was present, making sarcastic comments to harass Plaintiff.  Filing No. 15 at 1.  Plaintiff further alleges that on March 9, 2023, his housing unit had a "shake down" after which he discovered that six pages of notes documenting incidents involving prison officers were missing.  *Id.*  Later that morning when Plaintiff went to get his legal mail Miller waved and smiled at him in a "taunting and sarcastic way," after which Plaintiff refused to be escorted back to his cell by Miller and told other officers present he would not go with Miller because he was afraid of him.  *Id.*

---

[3] Plaintiff alleges that another inmate overheard Miller tell Plaintiff he was going to write up a conduct report against him and "fabricate a little bit."  Filing No. 1 at 10.

On May 29, 2023, Plaintiff alleges that to avoid having a shake down of his (and other inmates') cells he handed over a spray bottle that officers were looking for that was in another inmate's cell. Filing No. 21 at 2. Plaintiff submits that he was written up for possessing the spray bottle and ultimately given 20 days in lockdown by non-defendant Sears. *Id*.

On June 21, 2023, Plaintiff alleges that non-defendants Justin Wayne, Tristan Price and officer Neal denied him access to a telephone to call his attorney. *Id*. at 3.

On July 17, 2023, Plaintiff asserts that after a shake-down of his cell he was harassed, antagonized, and threatened by Gunn and another officer, after which items were confiscated and put into an evidence bag for "no reason." Filing No. 24 at 2. Plaintiff asserts that because of the shakedown he was moved to a different cell. Filing No. 21 at 5.

On July 21, 2023, Plaintiff asked non-defendant Grothe for deodorant and informed Grothe he did not want to interact with Miller (who was assisting Grothe at the time). Filing No. 24 at 2. However, instead of helping Plaintiff, Grothe informed Miller of Plaintiff's statement and later Miller brought Plaintiff the deodorant in an attempt to harass Plaintiff, but Plaintiff had his cell mate get the deodorant from Miller instead. *Id.*

Plaintiff also alleges that on September 16, 2023, non-defendant officer Juarez informed Plaintiff his recreation time had been cancelled due to an incident that had occurred several weeks earlier. *Id*. at 3. Plaintiff alleges that he disagreed with Juarez' reason for cancelling his recreation and asked for the "c/o's name" and date Juarez last worked in Plaintiff's unit so he could write a grievance but Juarez refused and pretended like he did not hear Plaintiff's request, instead mocking Plaintiff and harassing Plaintiff by

saying, "What did you say Kimbrough?  You feel like killing yourself?" *Id.*  Plaintiff submits Juarez told him that if he filed a grievance, he would be put on suicide watch and would likely be stripped and put in a green suit.  *Id.*  Plaintiff further alleges Juarez also refused Plaintiff's requests for toilet paper.  *Id.*

That same day when Juarez went on a break Juarez was relieved by non-defendant officer Aniya.  *Id.* at 4.  Plaintiff alleges that he informed Aniya that he was having chest-pains and needed toilet paper, but Aniya refused and referred to Plaintiff as a "little bitch." *Id*.  When Juarez returned, Plaintiff alleges he informed Juarez of his chest pains but Juarez simply replied, "Me too" and walked away.  *Id.*

The Court construes that Plaintiff alleges the following claims:

1.  Generalized threats and harassment claims against Gunn, Miller, Barreto, and Williams.

2.  First Amendment retaliation claims against Barreto and Miller.

Plaintiff alleges only mental injury and amends his relief sought to nominal and punitive damages.  Filing No. 33.

## II. APPLICABLE STANDARDS ON INIITAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate.  *See* under 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that

seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

### III. DISCUSSION

In the Initial Review this Court found that Plaintiff could not proceed against Miller, Williams, Barreto, or Gunn in their official capacities.  Filing No. 25 at 5.  As Plaintiff has not amended any of the factual allegations in his Complaint, for the reasons stated in the initial review, Plaintiff's official capacity claims against Miller, Williams, Barreto, and Gunn shall be dismissed without prejudice.  *See* *Id.* at 4–5.

Additionally, DCC is not an entity capable of being sued.  *Richmond v. Minnesota,* *No. CIV. 14-3566 PJS/JSM, 2014 WL 5464814, at *3 (D. Minn. Oct. 27, 2014)* ("[C]ounty jails are [also] not legal entities amenable to suit.") (citing *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir.2003) (per curiam)).  Therefore, Plaintiff's claims against DCC cannot proceed and DCC must be dismissed from this suit.

Plaintiff also spends considerable time in his supplemental filings alleging claims against non-defendants Juarez and Aniya as well as discussing the actions of other non-defendants Sears, Justin Wayne, Tristan Price and officer Neal.  *See* Filing No. 21 at 3; Filing No. 24.  Because these individuals are not named as defendants and are not parties to this case, the Court declines to analyze Plaintiff's statements with respect to these non-defendants and any purported claims with respect to them shall be dismissed. *See e.g.* *Chapple v. Franklin Cnty.*, No. 2:21-CV-5086, 2022 WL 856815, at *16 (S.D. Ohio Mar. 23, 2022), *report and recommendation adopted as modified sub nom.* *Chapple v. Franklin* *Cnty. Sheriff's Officers FCCC 1 & 2,* No. 2:21-CV-05086, 2022 WL 16734656 (S.D. Ohio Nov. 7, 2022).

As to the remaining claims against Miller, Gunn, Barreto, and Williams, although Plaintiff did not include any additional factual allegations in his Supplement, he now seeks to sue them in their individual, as opposed to official capacities. *See* Filing No. 33. The Court shall address those claims here.

## A. Verbal Threats and Harassment

The vast majority of Plaintiff's claims in his Complaint and Supplements against Williams, Miller, Gunn and Barreto (as well as non-defendants Juarez and Aniya) all are based on what Plaintiff classifies as verbal harassment and verbal threats consisting of calling Plaintiff names, staring at Plaintiff in his cell, and making comments about Plaintiff being thin skinned. Plaintiff alleges Williams called him names and inquired if Plaintiff wanted to commit suicide, Gunn verbally harassed him and refused to turn on his body camera when in Plaintiff's proximity to make Plaintiff feel uncomfortable, Miller tried to provoke Plaintiff into behaving badly by calling him names and threatening to write Plaintiff up for things he allegedly was not doing and generally verbally harassing Plaintiff even though he knew Plaintiff had mental health issues, and Barreto would taunt him and harass him and "dare" Plaintiff to file more grievances. Filing No. 1 at 8, 10–16.

Verbal threats by prison officials "do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985); *see also Simpson v. Hvass*, 36 F. App'x 221, 222 (8th Cir. 2002) (prison officers' verbal threats are not actionable in a Section 1983 suit) (citing *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)). "Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension." *Simpson v. Hamilton*, No. 6:21-CV-06004, 2021 WL 1392870, at *2 (W.D. Ark. Feb. 22, 2021), *report and recommendation adopted*, No. 6:21-

CV-06004, 2021 WL 1392854 (W.D. Ark. Apr. 12, 2021) (citing *Jones*, 990 F.2d at 434 (inmate's claims of general harassment and of verbal harassment were not actionable under section 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation)).

Thus, Plaintiff's claims that defendants Gunn, Williams, Barreto, and Miller subjected him to verbal threats and harassment fail to state plausible constitutional claims and shall be dismissed.

## B.  First Amendment Retaliation

Plaintiff alleges that Barreto punished him in retaliation for filing a grievance by placing him on lock down in his cell for 24 hours, but also because Plaintiff's cell door was closed when it should have been open. Filing No. 1 at 16.  Plaintiff also alleges that Miller drafted a false conduct report resulting in Plaintiff being transferred and locked down pending a hearing on his conduct as set forth in the conduct report by Miller. *Id.* at 8.  And that an inmate-witness overhead Miller state he was going to "fabricate" part of the report, apparently to make the allegations against Plaintiff more believable and/or to elicit a harsher punishment. *Id.*

The First Amendment prohibits government officials "from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  To succeed on a § 1983 retaliation claim, a plaintiff must prove that he "engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [the plaintiff] that would chill a person of ordinary firmness from engaging in that activity."

*Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), cert. denied, 546 U.S. 860 (2005)).

"The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Id.*at 1029 (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)). However, courts must also look to the nature of the alleged retaliation, to determine whether that action would dissuade a person of ordinary fitness from filing grievances. For example, name calling and verbal attempts to dissuade an inmate from filing a grievance does not rise to the level of a constitutional violation. See *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). Moreover, discipline based on some evidence of a violation "essentially checkmates" a First Amendment retaliation claim. *Farver v. Schwartz*, 255 F.3d 473, 474 (8th Cir.2001) (per curiam).

Plaintiff states a claim against Miller for First Amendment retaliation and his claim against him may proceed to the extent he seeks nominal damages, punitive damages, and/or injunctive and declaratory relief. *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).

However, to the extent Plaintiff alleges Barreto locked him in his cell for 24 hours in retaliation for filing a grievance, Plaintiff's First Amendment retaliation claim against Barreto cannot proceed and shall be dismissed. This is so as Plaintiff admits his cell door was closed but should not have been and that he was actively avoiding Barreto and his attempts to obtain compliance, and that because of his failure to comply with prison rules and keep his door open, the lockdown occurred.

IT IS THEREFORE ORDERED that:

1.      Only Plaintiff's First Amendment retaliation claim against defendant Officer Malik Miller in his individual capacity may proceed.

2.      The remainder of Plaintiff's claims against Miller and all other defendants in their individual and official capacities are dismissed without prejudice.

3.      For service of process on Officer Malik Miller in his individual capacity, the Clerk of Court is directed to complete a summons form and a USM-285 form for Officer Malik Miller using the following address "Douglas County Department of Corrections, 710 South 17th Street, Omaha, NE 68102," and forward them together with a copy of the Complaint, Filing No. 1, and Supplements, Filing No. 15, Filing No. 16, Filing No. 17, Filing No. 21, Filing No. 23, Filing No. 24, and Filing No. 33, and a copy of this Memorandum and Order to the United States Marshals Service.

4.      The Marshals Service shall serve Officer Miller in his individual capacity by certified mail or other authorized method of service at the Douglas County Correctional Center address shown above.  *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

5.      The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[4]

6.      Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint.  However, Plaintiff is granted, on the

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service.  *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013).  Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."  *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

Court's own motion, an extension of time until 90 days from the date of this order to complete service of process on Miller.

7.     Plaintiff is hereby notified that failure to obtain service of process on Miller within 90 days of the date of this order may result in dismissal of this matter without further notice.  A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

8.     The Clerk of Court is directed to set a case management deadline in this case with the following text: **February 26, 2025**: service of process to be completed.

9.     The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court.  Plaintiff shall keep the Court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal.

Dated this 27th day of November, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge